IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GEORGINA ARMSTRONG, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | NO. 3:08-CV-1458-O |
| | § | |
| BOEHRINGER INGELHEIM, | § | |
| PHARMACEUTICALS, INC., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION GRANTING
MOTION FOR SUMMARY JUDGMENT**

Before the Court are: Defendant's Motion for Summary Judgment (Doc. # 23), and Brief in Support (Doc. # 24) with Appendix in Support (Doc. # 25); Plaintiff's Response (Doc. # 32), and Brief in Support (Doc. # 32-1) with Appendix (Doc. # 32-2); and Defendant's Reply (Doc. # 37). Upon review of these documents, together with the pleadings in this case, the Court concludes that summary judgment should be granted for reasons explained below.

## I.    BACKGROUND

The controversy in this case rises from incidents during Plaintiff's employment by Defendant. Resolving disputed facts on which evidence has been produced in favor of Plaintiff, and combining that with undisputed facts, the outline of her employment history is as follows.

On March 15, 2000, Plaintiff Georgia Armstrong was hired by Ray Cofer ("Cofer") to work as a Sales Representative for Defendant Boehringer Ingelheim Pharmaceuticals, Inc., on an at-will basis. Def. App. at 36-37. Plaintiff initially worked in the South Texas territory in the San Antonio area. Def. App. at 36. In May 2005, Plaintiff was promoted to an at-will Specialty

Sales Representative in the Dallas East territory Def. App. at 6-7. Plaintiff moved from San Antonio to a residence in Dallas that was outside of her Dallas East sales territory. Def. App. at 7. She remained in this pay grade throughout the rest of her employment with Defendant.

In the spring of 2006, Defendant redrew the North Texas area boundaries. Def. App. at 23-24. The Dallas East territory Plaintiff was assigned was divided into Dallas North and Dallas South. Def. App. at 8.  As a result of the changed boundaries, Plaintiff's new assignment became the Dallas North territory in which she was paired with Casey Stackhouse ("Stackhouse"), a less experienced representative. Def. App. at 9-10. Mark Seidenberger ("Seidenberger") and Amy Campbell ("Campbell") were paired in the Dallas South territory. *Id.* Defendant's practice was to pair experienced and non-experienced sales personnel in the respective sales territories. Campbell was well experienced, like Plaintiff. *Id.* In December of 2006, Seidenberger left Dallas South to receive a promotion. Plaintiff sought to replace him, but Defendant moved Pam Dixon, a lesser experienced person, into that Dallas South slot. *Id.* Had they paired Plaintiff with Campbell, they would have had "two extremely experienced rep[resentatives] in [the Dallas South] territory." Def. App. at 10.

On June 1, 2007, Plaintiff called Defendant's hotline to file a complaint against Keith Braden ("Braden"), Plaintiff's manager. Pl. App. at 16; Def. App. at 52. In the call, Plaintiff alleged that Braden was targeting her because of her age and that Braden was "unusually cruel and rude." Pl. App. at 16; Def. App. at 52. Angela Quebedeaux ("Quebedeaux"), a human resources manager for Defendant, admitted in her deposition that she informed Braden that Plaintiff had lodged a complaint against him. P. App. at 18.

Defendant decided to terminate Plaintiff's employment on July 10, 2007, and attempted to contact her to tell her this. Def. App. at 33. On July 19, 2007, Defendant's human resources

2

officer was informed that Plaintiff was requesting FMLA leave to deal with depression, stress

and anxiety, on the advice of her physician. Def. App. at 33; *see also* Pl. App. at 20-21. Plaintiff

told Defendant that she planned to return to work on August 1, 2007. Def. App. at 49.

On August 1, 2007, Plaintiff received a letter from Defendant notifying her that her

employment with Defendant had been terminated due to her falsification of company records

and misuse of the company credit card. Def. App. at 67. On January 29, 2008 Plaintiff filed an

EEOC complaint for race, gender, age, and retaliation discrimination. Def. App. at 69-72.

This case was filed on August 19, 2008.[1] Doc. #1. Subsequently, Defendant filed a

Motion to Dismiss on November 10, 2008. Doc. #5. The Court denied this Motion. Doc. # 19.

Discovery has since closed. On March 12, 2010, Defendant filed the present Motion for

Summary Judgment. Doc. # 23. The parties have completed further pleadings and filed their

briefs.

## II.    LEGAL STANDARD

Summary judgment is proper when the pleadings and evidence on file show that no

genuine issue exists as to any material fact and that the moving party is entitled to judgment as a

matter of law. FED. R. CIV. P. 56(c). "[T]he substantive law will identify which facts are

material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of

material fact exists "if the evidence is such that a reasonable jury could return a verdict for the

non-moving party." *Id.* The movant makes a showing that there is no genuine issue of material

fact by informing the court of the basis of its motion and by identifying the portions of the record

which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317,

---

[1]Plaintiff does not allege race discrimination in this lawsuit.

323 (1986); FED. R. CIV. P. 56(c)

Once the movant makes its initial showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show. . . some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. Neither conclusory allegations nor unsubstantiated assertions will satisfy the non-movant's summary judgment burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Summary judgment in favor of the Defendant is proper if, after adequate time for discovery, the Plaintiff fails to establish the existence of an element essential to her case and to which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

4

Both parties are required to proffer evidence through appendices to their motions or briefs and articulate the relevance of that evidence in order to meet the burdens of production or articulation that may arise. *See Ragas*, 136 F.3d at 458.  A court is not obligated to sift through the evidence and construct theories of the case that support or negate a motion for summary judgment. The Fifth Circuit established almost thirty years ago that "[j]udges are not ferrets" under Rule 56. *Nicholas Acoustics & Specialty Co. v. H & M Constr. Co., Inc.,* 695 F.2d 839, 846-47 (5th Cir.1983). The Fifth Circuit has more recently reiterated that "[j]udges are not like pigs, hunting for truffles buried in briefs." *de la O v. Housing Auth. of City of El Paso, Texas*, 417 F.3d 495, 501 (5th Cir. 2005) (quoting  *United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir.1991)), cert. denied  546 U.S. 1062 (2006); *Santos v. Evergreen Alliance Golf, LP,* 650 F. Supp. 2d 604, 611 (S.D. Tex. 2009).

### III.    ANALYSIS

### 1.    Count One: Plaintiff's Age Discrimination Claim

### a.  Legal Basis

Count One of Plaintiff's Complaint invokes the Age Discrimination in Employment Act ("ADEA"), which makes it unlawful for an employer "to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To withstand an employer's motion for summary judgment on an ADEA claim, a plaintiff must present evidence, which can be direct or circumstantial, sufficient to create a genuine issue of fact whether (s)he was discriminated against by an employer because of age. *See Evans v. City of Bishop,* 238 F.3d 586, 590-92 (5th Cir. 2000).

Defendant seeks summary judgment on the merits of the claim. It also seeks summary

judgment against any time-barred claims. The Court will first address Defendant's statute of limitations argument.

### b. Statute of Limitations – Age

It is axiomatic that a Texas[2] plaintiff may not pursue remedies in court on a federal statutory discrimination claim unless she first filed a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of an allegedly discriminatory act. *Baxter v. 3M,* 98 Fed. Appx. 301, 302 (5th Cir. 2004); *Ramirez v. City of San Antonio,* 312 F.3d 178, 181 (5th Cir. 2002) (citing 42 U.S.C. § 12117; *Blanks v. Ford Motor Credit,* No. 3:04-CV-0331-B, 2005 U.S. Dist. LEXIS 33977 at *9-10 (N.D. Tex. Apr. 20, 2005). The limitations period on an employment discrimination claim begins to run from the time the complainant may be fairly charged with knowledge of the violation. *Ramirez,* 312 F.3d at 181 (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000)).

Defendant argues the Plaintiff's Complaint contains a number of allegedly discriminatory events that occurred more than three hundred days before Plaintiff filed her EEOC complaint. Although Plaintiff does not present evidence in rebuttal, it is apparent from evidence presented by Defendant that Plaintiff initiated proceedings with the EEOC on January 27, 2008, Def. App. 069-076, well within three hundred days of her discharge on August 1, 2007. Her sole claim under Count One is that her employment was terminated by Defendant because of her age. *See*

---

[2] "An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days. A claim is time barred if it is not filed within these time limits." *AMTRAK v. Morgan,* 536 U.S. 101, 109 (2002). Because Texas has such an authority in place, the applicable time limit is 300 days. *See Huckaby v. Moore,* 142 F.3d 233, 238 (5th Cir. 1998).

Pl. Compl. at 6-8.  Accordingly, Defendant's statute of limitations claim fails.

As a result, the Court turns to the merits of Defndant's request for summary judgment on Plaintiff's age discrimination claim.

### c.  **Analytical Framework**

A plaintiff may prove discrimination through direct or circumstantial evidence. *Rachid v. Jack in the Box,* 376 F.3d 305, 309 (5th Cir. 2004). When the evidence is direct, the court uses a conventional approach in assessing the evidence. *Id.* Direct evidence is evidence which, if believed, proves the fact in question without inference or presumption. *Fabela v. Socorro Indep. Sch. Dist.*, 329 F.3d 409, 415 (5th Cir. 2003); *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993). In the employment discrimination context, this includes "any statement or document which shows on its face that an improper criterion served as the basis for an adverse employment action." *Fabela,* 329 at 415.

However, if an inference is required for the evidence to be probative as to an employer's discriminatory animus in terminating the former employee, the evidence is circumstantial, not direct. The court must then evaluate the case within the burden-shifting framework established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973), and its progeny.  *See Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005); *Rachid*, 376 F.3d at 308-13. In this case, Plaintiff argues from circumstantial evidence.

The *McDonnell Douglas* burden-shifting approach requires a plaintiff first to make out a prima facie case. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506 (1993). A prima facie case is established by showing that: (1) she was discharged; (2) she was qualified for the position; (3)

she was within the protected class at the time of discharge – i.e., "forty years of age of older;"[3] and (4) she was either replaced by someone outside the protected class, replaced by someone younger, or otherwise discharged because of her age. *Jackson v. Cal-Western Packaging Corp.,* 602 F.3d 374, 378 (5th Cir.  2010).

If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. *McCoy v. City of Shreveport,* 492 F.3d 551, 556-57 (5th Cir. 2007); *Alvarado*, 492 F.3d at 611. The defendant must present the reason for its treatment of the plaintiff by pointing to admissible evidence in the record legally sufficient to justify a judgment in its favor. *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 (U.S. 1981). The burden is one of production, not persuasion. *Russell v. McKinney Hosp. Venture,* 235 F.3d 219, 222 (5th Cir. 2000).

If defendant meets this burden of production, the plaintiff "bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory . . . purpose." *McCoy,* 492 F.3d at 557. In an ADEA case, the plaintiff must prove that age was the "but-for" cause of the adverse employment action. *Gross v. FBL Fin. Servs.,* 129 S. Ct. 2343, 2352 (U.S. 2009).

### d.  Plaintiff's Prima Facie Case

It is undisputed Plaintiff was discharged by Defendant, qualified for the position, and within the protected class at the time of discharge. Defendant denies however that it discharged her because of her age or that Plaintiff can otherwise meet the fourth element of a prima facie case.

---

[3] *See* 29 U.S.C. § 631(a).

Plaintiff alleges that Defendant intended to replace her with someone younger. Pl. Compl. at 7. Plaintiff does not identify her replacement in her pleadings or in evidence submitted for consideration in response to Defendant's motion for summary judgment. Further, she does not submit evidence to support her contention that Defendant intended to replace her with someone younger, apart from her own suspicion. Since she presents no evidence Defendant replaced her or intended to replace her with someone younger, Plaintiff's prima facie case rests on a claim that she was "otherwise discharged because of her age."

The evidence Plaintiff submitted in support of this claim consists of her various statements in her deposition that she felt age was a motivating factor in all decisions made by Defendant regarding her employment.  Without more, her speculative belief is insufficient to establish a prima facie case. *See Brown v. CSI Logic, Inc.,* 82 F.3d 651, 655 (5th Cir. 1996).[4] The Fifth Circuit has noted that:

> We resolve factual controversies in favor of the nonmoging party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.

*Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th CIr. 1994) (citing *Lujan v. National Wildlife Fed.,* 497 U.S. 871, 888 (1990).[5]

---

[4] *Brown* has been abrogated insofar as it established a formal four-part test to determine if age-related remarks by an employer's personnel may serve as sufficient evidence of age discrimination.  *See Russell v. McKinney Hospital Venture,* 235 F.3d 219, 226 (5th Cir. 2000). However, *Brown* remains authoritative regarding the insufficiency of speculative evidence alone.

[5] In her complaint, Plaintiff claims she was replaced by a younger African-American woman and relocated to the Dallas East Territory which resulted in her living outside of her assigned territory.  Compl., at 3, ¶ 9.  However, in her deposition testimony she admitted she was not replaced, not relocated from the territory she was assigned, and that she already lived outside of her assigned territory. Def. App. at 6-8.

The Court finds that Plaintiff failed to present evidence to make a prima facie case under the ADEA that she was replaced by someone outside of the protected class or was otherwise discharged because of her age. Even though Plaintiff failed to establish a prima facie case, the Court will address the remaining issues as if she had carried her burden.

### e. Defendant's Articulation of Non-discrimination

Defendant articulates that it terminated Plaintiff because she had deliberately chosen to continue defrauding her employer despite having been forgiven for past indiscretions. While earlier instances had been forgiven, the repeated offenses led Defendant to the conclusion that it should sever ties with Plaintiff.

Specifically, Defendant shows that Plaintiff's employment record held a pattern of financial and record-keeping dishonesty or abuse. On May 4, 2001, Ray Cofer sent a letter to Plaintiff's manager at the time, Keith Hembree ("Hembree"). Def. App. at 38. The letter notified Hembree that Plaintiff had used her company credit card to pay for personal expenses, and that Defendant had cancelled the credit card. *Id.* . The letter also notified Hembree that Plaintiff had been counseled that if she ever received another company credit card that it could only be used for business expenses. *Id.*

A year later on May 9, 2002, Plaintiff claimed $2275.50 in expenses for a company dinner. Def. App. at 39. Plaintiff had actually split the expense with two other colleagues and her colleagues each claimed the correct expense amount of $821.40. *Id.* On June 27, 2002, Plaintiff received a letter from Hembree warning her that if such a mistake occurred again more decisive action and discipline would be taken against her. *Id.* In July 2006, Plaintiff was questioned by company officias regarding questionable company credit card charges and bank balances. Def. App. at 48-51.

10

On October 30, 2006, Plaintiff was issued a letter from her regional manager, Scott Richardson ("Richardson"), regarding multiple uses of her company credit card for personal expenses. Def. App. at 43-44. The letter notified Plaintiff that she could be terminated from the company if she failed to comply with Defendant's credit card policy in the future. *Id.* On November 17, 2006, Plaintiff was issued another letter from Richardson notifying her that the amount she still owed the company from her fraudulent use of the company credit card would be deducted from her paycheck, since she failed to pay the amount back to Defendant in a timely manner. Def. App. at 45. On May 9, 2007, Braden emailed Angela Quebedeaux ("Quebedeaux") in Defendant's Human Resources Department to notify her that Plaintiff had been "recording"[6] face-to-face calls with physicians that Plaintiff had not actually performed. Def. App. at 46.

On June 12, 2007, Plaintiff submitted a $270.63 expense report and sign-in sheet for an ice cream snack she provided to a client called Texoma Neurology. Def. App. at 59. Defendant was concerned because the cost of the snack was unusually high. Def. App. at 32. Defendant questioned Plaintiff about the sign-in sheet because Texoma Neurology had told Defendant that the signatures on the sign-in sheet had been forged. Def. App. at 32, 53-54.

Based on the foregoing, the Court concludes Defendant has articulated legitimate, non-discriminatory reasons for terminating Plaintiff's employment.

### f.  Plaintiff's Pretext Argument

A plaintiff may show pretext by showing discriminatory reasons motivated the defendant or the proffered reasons are unworthy of credence. *Hanchey v. Energas Co.,* 925 F.2d 96, 98 (5th Cir. 1990). Plaintiff must rebut each reason presented by a defendant. *Harris v. Mississippi*

---

[6] Defendant company's practice uses the term "recording" to mean documenting a purported sales call.

*Transp. Comm'n,* 329 Fed. Appx. 550, 555 (5th Cir. 2009). Here, Plaintiff's argument of pretext consists of her dispute of the facts stated by Defendant. In other words, she does not present other evidence that casts a different light on them, she instead argues their significance. First, Plaintiff argues that her earlier acts of dishonesty had been forgiven, and opines they should therefore not count against her simply because the Defendant believed the pattern continued. Next, Plaintiff disputes the findings of Defendant's investigation that the signatures she submitted from the Texoma Neurology sign-in-sheet were forged. *See* Pl. App. 32-33, 48-59.

That Plaintiff was not immediately discharged following her earlier acts of dishonesty does not mean Defendant could not consider them when determining a proportionate response to its latest belief that she had defrauded it again. Further, whether Plaintiff actually forged signatures related to her Texoma Neurology visit or not, she has not shown Defendant did not believe, in good faith, this was the reason for their action.  Even if Defendant's belief was honestly misplaced, this is insufficient to establish pretext. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. Tex. 2010). Plaintiff's bald, self-serving denial of wrong-doing does not suffice to rebut Defendant's belief *Id.* As such, Plaintiff has not shown these reasons are false or unworthy of credence.

Plaintiff also seeks to infer pretext through a temporal proximity argument. Plaintiff's argument rests on three assertions: (1) the majority of the actions upon which Defendant premised reasons to fire Plaintiff took place well before she was fired; (2) Defendant knew she had complained about her supervisor's attitude toward her; and (3) shortly learning of that complaint, Defendant fired her. *See* Pl. Resp. at 2-6.

The timing of an adverse employment action "can be a significant, although not necessarily determinative, factor." *Mayberry v. Vought Aircraft Co.,* 55 F.3d 1086, 1092 (5th

Cir. 1995). "Close timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case." *Swanson v. Gen. Servs. Admins.,* 110 F.3d 1180, 1188 (5th Cir. 1997) (emphasis added); s*ee also Shirley v. Chrysler First, Inc.,* 970 F.2d 39, 43 (5th Cir. 1992) (noting that temporal proximity is just one of the elements in the entire calculation); *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007).

However, the full record in this case evidences a line of difficulties involving dishonesty on the part of Plaintiff that ran from the earlier indiscretions on through an investigation shortly before her termination that found she had falsified others' signatures to cover an improper use of company credit card. While the earlier indiscretions were resolved in their time, they were considered together with the fresh transgressions as management decided Plaintiff had an incorrigible tendency toward financial irresponsibility and dishonesty. Plaintiff has failed to carry her burden to show this reason was pretextual.

Plaintiff also appears to contend that the Texoma Neurology sign-in sheet issue was the final part of a scheme to manufacture a case for dismissing her. However, she has presented no evidence of that pretext other than her own self-serving suspicions, which are insufficient to sustain her burden. *Jackson*, 602 F.3d at 379; *Brown*, 82 F.3d at 655; *Little*, 37 F.3d at 1075. Her claim here thus fails.

### g. Conclusion

The Court concludes that summary judgment should be granted as to Count One of the Plaintiff's Complaint.[7] The Court turns to Count Two.

---

[7] Both sides submitted evidence pertaining to Plaintiff's assertion during her deposition that she had suffered age discrimination in that Mark Seidenberger had been promoted to a position he

2.      **Count Two: Plaintiff's Gender Discrimination Claim**

   **a.  Legal Basis**

Count Two of Plaintiff's Complaint contends that she was discriminated against because of her gender. Pl. Comp. at 8. Title VII of the Civil Rights Act of 1964 makes it illegal "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...."

Plaintiff does not allege she was discharged because of her gender but instead complains of allegedly discriminatory decisions during the course of her employment which she contends were based on her gender. She contends: Defendant refused to create a sales territory around where she lived (yet did so to suit a male sales representative); reprimanded her more harshly than it did a male representative for transgressions against corporate rules; and, denied her the opportunity to be a trainer for persons coming into her pay grade. Plaintiff's case is built on her inferences, and thus the Court again applies the *McDonnell Douglas* burden shifting test. In this, as in any Title VII case, Plaintiff may also rebut defendant's nondiscriminatory reason through evidence that the reason, while true, is only one of the reasons for its conduct, and the plaintiff's

---

wanted, but she had not received a separate position that she wanted. However, she has only pled age discrimination with regard to being fired. Even had she pled Seidenberger's promotion, and her disappointment over a requested transfer, however, the Court notes her case would fail. Plaintiff admitted in her deposition that she did not even apply for the position for which Seidenberger applied. Def. App. at 9. Plaintiff insists the comparison was valid nonetheless since he got a position he wanted and she was denied a separate, completely unrelated position that she wanted. *Id.* However, Plaintiff admits in her deposition that the position she wanted was intended for a person of less experience to be paired with a more experienced partner, and the company's decision was consistent with policy in that it left Plaintiff as the more experienced partner in her own district. *Id.* at 10-12.  She failed to make a prima facie case on this ground because she has not shown she and Seidenberger are similarly situated or failed to overcome any argument of pretext.

protected characteristic is another motivating factor (mixed-motive alternative). *See Rachid*, 376 F.3d at 312.

Defendant seeks judgment on the merits of the claim. It also seeks summary judgment against any time-barred claims. The Court will first address Defendant's statute of limitations argument.

### b.  Statute of Limitations – Gender

As earlier discussed, Plaintiff may not pursue remedies in court on a federal statutory discrimination claim unless she first filed a claim with the Equal Employment Opportunity Commission ("EEOC") within 300 days of an allegedly discriminatory act. *Baxter v. 3M,* 98 Fed. Appx. 301, 302 (5th Cir. 2004). The evidence shows that Plaintiff initiated proceedings with the EEOC on January 27, 2008, Def. App. 069-076, three hundred days after April 2, 2007. Defendant's procedural argument here is that any claim of gender discrimination that occurred before that date should be time-barred.

Plaintiff contends that all of her claims of gender discrimination should be heard under the exception of "hostile work environment" set out in *Berry v. Board of Sup'rs of L.S.U.,* 715 F.2d 971 (5th  Cir. 1983). *Berry* generally support a "hostile work environment / continuous violation theory" under which all incidents would be actionable if shown to be part of an ongoing conspiracy against her, regardless of time-bar limitations. However, Plaintiff does not address  the standards *Berry* set out to support this theory:

> In order to support a finding of a continuous violation, [plaintiff]
> must do more than show a series of unrelated and isolated
> instances of discrimination. She must prove a series of continuous
> violations constituting an organized scheme leading to a present
> violation."). This inquiry, of necessity, turns on the facts and

context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981 (1983).

Plaintiff has evidenced only a series of disconnected instances of discipline and decisions that are not persuasive of a prolonged conspiracy against her, particularly given the degree to which her own evidence displays early repeated forgiveness of transgressions (which she does not dispute) and a moderate, measured response in her job evaluations.  She testified as follows:

Q: And so even as you're getting your raise in February, 2007, just four months earlier there are issues with personal charges at hotels, clothing, cash advances for $697, and then returned checks in May, June, July and August of '06, correct?
A: Correct.
Q: And you could have been terminated at any time for these, couldn't you have?
A: Sure.
Q: I mean, it's against – is it permissible under company policy to purchase clothes?
A: No.
Q: I mean, that's an unauthorized use, isn't it?
A: Correct.

16

Q: And they give you a 1.5 merit increase, correct?

A: Correct.

Def. App. 19.  Plaintiff's own evidence refutes her unsupported assertion that there has been continuous discrimination against her.

The limitations period on an employment discrimination claim begins to run from the time the complainant may be fairly charged with knowledge of the violation. *Ramirez,* 312 F.3d at 181 (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 371 (5th Cir. 2000)). Plaintiff does not claim nor evidence delayed awareness of the incidents as to which she produced evidence seeking to support findings of gender discrimination. Accordingly, the Court finds that any claims before April 2, 2007, are time-barred.  Her reprimand of May 31, 2007, for falsely documenting a doctor contract therefore remains, as does her termination on August 1, 2007. Defendant's plea for a time bar of those claims fails.

The evidence also shows that the territorial redistribution occurred in December, 2006. *See* Def. App. 32. Her claim from that incident is time barred. However, even if it were not, the claim would fail for reasons detailed below.

As for those claims that remain, Plaintiff's case is built on her inferences, and thus the Court again applies the *McDonnell Douglas* burden shifting test.

**b.  Plaintiff's Prima Facie Case**

Plaintiff must establish a prima facie case of gender discrimination under Title VII by showing that: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *See Willis v. Coca Cola Enters., Inc.,* 445 F.3d 413, 420 (5th Cir. 2006); *Urbano v. Cont'l Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir.

1998). Plaintiff alleges that she was not considered for "positions she was amply qualified for in favor of less qualified men ...." Pl. Compl. at 8.

The evidence she submitted limits this claim to three discrete disputes involving three men. In her deposition, she identifies Seidenberger[8] and Stackhouse ("Stackhouse") and David French ("French") as those who were treated differently than she was. Pl. App. at 1-6, 12. The first dispute involves her effort to compare two unrelated decisions: she claims that Defendant redrew the Dallas territories so as to center around Stackhouse's residence, which she contrasts with their refusal to draw a territory around her residence. Pl. App. at 6. The second dispute is her claim that Stackhouse was not reprimanded as she was for breaking company rules. Pl. App. at 14.  In the third dispute, Plaintiff complains Defendant failed to assign her to train incoming sales representatives as it did for French, another male employee. Pl. Ap.. at 12,

Defendant contends that she cannot establish a prima facie case in each dispute cited because she fails establish that those with whom she compares herself were similarly situated.  It also argues her claims fail because it has legitimate reasons for its actions and Plaintiff cannot show otherwise.

When relying on evidence to show a similarly situated individual was treated more favorably, Plaintiff must present evidence showing that she was actually similarly situated to the person(s) upon which any comparison is drawn in order to establish a prima facie case. *Smith v. Wal-Mart Stores (No. 471),* 891 F.2d 1177, 1180 (5th Cir. 1990) (per curiam).  "[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those

---

[8]Plaintiff contends Seidenberger was treated more favorably than she was. However, she provides no argument as to how his employment status was more favorable than hers due to her gender.  To the extent her argument is related to the circumstances referenced in footnote 7, supra., her gender claim fails for the same reasons.

alleged to be similarly situated accounts for the difference in treatment received from the

employer." *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 222 (5th Cir. Tex. 2001)(citing

*Wyvill v. United Cos. Life Ins. Co.,* 212 F.3d 296, 304-05 (5th Cir. 2000); *Polanco v. City of*

*Austin, Tex.,* 78 F.3d 968, 977 (5th Cir. 1996)). Employees may be treated differently depending

on the nature and number of their offenses. *Wallace,* 271 F.3d at 221. In *Wallace,* for example, a

nurse fired for both negligent performance and the falsification of records could not validly

compare to herself to another nurse whose only offense was negligent performance. *Id.*

The Court will now examine the summary judgment evidence related to these alleged

differences.

### (i)      Territory assignments relative to residence

Plaintiff points to evidence that Defendant did not draw a territory around where she

lived. In her pleadings, she contends this is a violation of the company's policy statement that

"[i]t is the sales manager's responsibility to ensure that all sales representatives and district

managers reside in locations that allow for the most efficient and effective coverage of the

territory or district." Pl. Compl. at 3.  In her evidence, she suggests that assigning Stackhouse a

territory in which he lived and not doing the same for her constituted gender discrimination

against her. Specifically, her testimony on this point was:

> Q. Okay. Now, you also referred to opportunities and stated that part of your
> gender discrimination claim is that Mark [Seidenberger] and Casey [Stackhouse]
> received greater opportunities. What greater opportunities did Mark receive?
> A. Well, he was able to stay and work in the Southeast Dallas territory. Which he
> did not live in either.
> Q. Where did he live?
> A. He lived up by Medical City in Richardson, Texas, on the west side of 75.

Q. Okay.

A. Casey Stackhouse was allowed to live in Melissa, Texas. And the territory was really carved out to where he  lived in the center of the territory.

Pl. App. at 6. (emphasis added).

It is not clear what Plaintiff complains of with respect to Seidenberger in this passage. It is undisputed that Plaintiff was allowed to live outside of her assigned territory. Def. App. at 8. Plaintiff has not otherwise shown how her circumstances are different than Seidenberger. Therefore, they are not similarly situated and Plaintiff cannot make a prima facie case with respect to this allegation.

Further, it is Plaintiff's burden to prove that she and Stackhouse are similarly situated for purposes of this claim. *Smith v. Wal-Mart Stores (No. 471),* 891 F.2d at 1180.  Her evidence negates that she and Stackhouse were similarly situated.  Stackhouse already resided in his territory before the 2006 redraw and remained within it after the 2006 redraw. *See* Def. App. 7-10.  In contrast, Plaintiff did not reside in her territory before the 2006 redraw. *Id.* Further, she remained outside of her territory after the 2006 redraw and subsequently moved farther from this territory rather than into it or closer to it. Def. App. At 8.  Plaintiff has thus failed to show she and Stackhouse were similarly situated.

This failure leaves the Court with no alternative but to conclude Plaintiff has failed to establish a prima facie case in this instance. However, as discussed below (2(c) *infra.*), even had she done so, Defendant articulates and evidences a non-discriminatory purpose to which she replies with insufficient evidence of pretext.

**(ii)       Reprimand comparison**

Plaintiff has pled that in the spring of 2007 she was reprimanded for reporting a meeting with a physician that did not actually occur. *See* Pl. Compl. at 4. She does not explain the

circumstances surrounding her reprimand, however she insists that there was no formal

reprimand of Stackhouse for violating company policy. Pl. App. at 14. Defendant does not

dispute that it reprimanded Plaintiff but provides the two circumstances were different.

Defendant explains Plaintiff was reprimanded for representing that she made a sales contact

when she did not while Stackhouse failed to properly deliver an approved message concerning

Defendant's product.

The only evidence Plaintiff offers to compare these instances is her belief that

Stackhouse was not reprimanded for his offense while she was reprimanded for her offense. *See*

*id.* Plaintiff states that no punitive measures were taken against Stackhouse for his supposed

violation. Her testimony on this incident was as follows:

Q. Okay. The other thing that you mentioned earlier was you felt like you were

discriminated against on the basis of your gender because of reprimand. What are

you referring to there with respect to Mark and Casey [Stackhouse]?

A. In particular with Casey, he failed to deliver the corporate message for the

drugs properly and instru-- instructed physicians incorrectly on -- on the actual

FDA-approved messages for the drugs.

Q. Okay. And were you there when he failed to do that correctly?

A. No. I was told this by Keith Braden.

Q. Okay. And what happened to Casey?

A. Nothing.

Q. And you know his disciplinary file how?

A. Keith [Braden] shared it with me.

Q. What do you mean he shared it with you?

21

A. He told me that I was -- that he -- that Casey was deficient in this area, that

there was a problem, and that I was to coach and help him because he didn't

understand and deliver those messages well.

Q. Okay. And you don't know what Keith did to help correct that situation, do

you? I mean, he asked you to coach him?

Q. Right.

*Id.*

Plaintiff presents no evidence or argument as to how intentionally misrepresenting a sales

visit is similar to mistakenly delivering a message about Defendant's product.  It is Plaintiff's

burden to make a showing that these two incidents were sufficiently similar from which a

comparison can be made between Stackhouse's treatment and her own. *Smith v. Wal-Mart Stores*

*(No. 471),* 891 F.2d at 1180.  Plaintiff has failed to establish a prima facie case in this instance.

However, as discussed below (2 (c) *infra.*), even had she done so, Defendant articulates and

evidences a non-discriminatory purpose to which she replies with insufficient evidence of

pretext.

**(iii)     Training assignments**

Plaintiff further testified in deposition that she was denied the opportunity to go to

Connecticut and help train incoming sales representatives, while French (presumably male,

although this is not stated in her evidence) was given that same opportunity.[9]  Pl. App. at 12.

She testified that a stipend was paid to trainers and she considered  it a plum temporary

_____

[9] For clarity, the Court notes that in her pleading Plaintiff claimed she was denied "initial
training;" however, in her deposition testimony she admitted this was not true and indicated that
the remarks referred to the fact she was not selected to provide initial training for senior sales
representatives. Pl. App. 8-9.

assignment. Pl. App. at 8-12.

To make a prima facie showing, Plaintiff must present evidence showing that she was similarly situated to French, the person with whom she makes her comparison of treatment. *Smith v. Wal-Mart Stores (No. 471),* 891 F.2d at 1180. Plaintiff offers no evidence of French's qualifications, leaving the Court with no means to determine whether she was equally or more qualified than French.  As such, Plaintiff has failed to establish a prima facie case in this instance. However, as discussed below (2 (c) *infra.*), even had she done so, Defendant articulates and evidences a non-discriminatory purpose to which she replies with insufficient evidence of pretext.

The Court now turns to consider Defendant's articulation of non-discriminatory purpose as to each of Plaintiff's claims of disparate treatment.

**c.      Defendant's Articulation of Non-Discrimination**

**(i)      Territory assignments relative to residence**

Defendant agrees that at the time it divided the territory, Stackhouse lived in Melissa, Texas, and that this ended up being a relatively central location in his eventual territory. Def. App. at 9-10. However, Defendant notes that when Plaintiff first moved to Dallas from San Antonio, she chose to move into a different territory then the one she had been assigned. Further, when the territories were redrawn and divided, she moved again, this time farther away from her territory. Def. App. at 8.

More significantly, Defendant describes the process by which territories were established as one based not on anyone's residency, but on providing the same sales volume opportunities to each two person team of an experienced representative like Plaintiff with a junior representative. Def. App.  at 31-32.  Plaintiff had been notified before ever moving to Dallas that the company

23

reserved the right to make this periodic divisions and adjustments. Def. App. at 36, and was

aware they did so roughly every six months. Def. App. at 7. Hence, Defendant articulated

legitimate non-discriminatory reasons for the drawing of the sales territories.

### (ii) Reprimand comparison

Defendant articulates that it dealt with Plaintiff and Defendant according to the

respective circumstances and offense. Plaintiff was reprimanded for reporting a physician

contact that Defendant said she did not actually make. *See* Pl. Compl. at 4. Defendant presents

evidence that Stackhouse committed a different offense than the one for which Plaintiff was

reprimanded. Def. App. at 16.

Specifically, Defendant offered Plaintiff's deposition testimony where she testified that

Stackhouse "failed to deliver the corporate message for the drugs properly and ... instructed

physicians incorrectly on - on the actual FDA-approved messages for the drugs." *Id.* Plaintiff

further admitted that she had not reviewed Stackhouse's personnel file and she did not actually

know whether or not Stackhouse had been reprimanded for his offense or whether his offense

was cumulative of earlier indiscretions. *Id.*

Defendant has articulated legitimate non-discriminatory reasons for its discipline of

Plaintiff over this conduct.

### (iii) Training assignments

Defendant responds on the training issue with evidence – using Plaintiff's own testimony

– that she lacked the experience relative to the training required. Pl. App. at 11-12. She *had* been

chosen in past years to train less experienced persons at her earlier level of employment, Pl. App.

11, but having been recently appointed to the level she held in Dallas, she lacked the sort of

experience at that level necessary to instruct others at *that* level. Pl. App. 12.

The Court concludes that Defendant articulates legitimate, non-discriminatory reasons for each of the foregoing actions, and turns to find any suggestion of pretext from Plaintiff.

### d. Plaintiff's Pretext Argument

Plaintiff simply disagrees with Defendant's decision to base its employment actions involving her upon a review of her entire history with the company, including sales figures, previous disciplinary problems, and qualifications. *See* Pl. Brief at 4-8. Indulging Plaintiff by reviewing her evidence, the Court finds it consists solely of Plaintiff's own testimony and self-serving speculation. This is insufficient as rebuttal of the non-discriminatory reasons provided by Defendant. *See Jackson,* 602 F.3d at 379.

### e. Conclusion

The Court concludes that summary judgment is appropriate as to Count Two of Plaintiff's Complaint. The Court turns to Count Three.

### 3.    Count Three: Plaintiff's Disability Leave Claim

### a. Legal Basis

Plaintiff contends that she was disabled when fired and that she suffered discrimination in violation of the American with Disabilities Act ("the ADA"). Plaintiff does not describe her specific disability beyond noting that she had taken medical leave for anxiety, depression and stress. Pl. Resp. 2-3; *see also* Pl. Compl. (no identification of the claimed disability or its symptoms).

The ADA is an anti-discrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities. *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 161 (5th Cir. 1996), *cert. denied*, 519 U.S. 1029 (1996). The ADA prohibits discrimination against a qualified

individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). Courts must interpret this definition strictly. *Carmona v. Southwest Airlines Co.,* No. 08-51175, 2010 WL 1614504, at *6 (5th Cir. Apr. 22, 2010) (citations omitted).

Plaintiff relies on inferences to sustain her case, and so the Court reviews the evidence under the *McDonnell Douglas* standard. *Aldrup v. Caldera,* 274 F.3d 282, 286 (5th Cir. 2001) (*McDonnell Douglas* applies to ADA / termination claims).

**b.  Plaintiff's Prima Facie Case**

To establish a prima facie case of intentional discrimination violating the ADA, a plaintiff must show that she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Seaman v. CSPH, Inc.,* 179 F.3d 297, 300 (5th Cir. Tex. 1999); *see also Arrington v. Southwestern Bell Tel. Co.,* 93 Fed. Appx. 593, 596 (5th Cir. Tex. 2004).  The employer then "must show a legitimate, nondiscriminatory reason for its action." *Seaman,* 179 F.3d at 300. The employee must then rebut this with evidence revealing those reasons to be pretext by a preponderance of the evidence. *Id.*

Plaintiff's evidence does not establish disability. Her evidence mentions disability three times. She submitted for consideration her application to Defendant for FMLA leave, in which she requested short term disability to start on July 27, 2007. Pl. App. at 20. In deposition, her

supervisor mentions that the FMLA form allows notation as to a request for short term disability, and then confirms that she requested it to begin on July 27, 2007. Pl. App. at 23-24.  In the paperwork filed with Defendant, the period for her short term disability absence was left "open-ended." Pl. App. at 24. However, she testified that she had told Defendant she would return on August 1, 2007, absent contrary orders from a physician, which were not obtained. Def. App. at 30. Beyond this, she has submitted nothing that addresses the specific issues that require substantiation to establish an ADA-related disability.

A disability for ADA purposes is: (1) a physical or mental impairment that substantially limits one or more major life activities; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Sutton v. United Airlines, Inc.,* 527 U.S. 471 (1999), *superseded in part by statute, ADA Amendments Act of 2008,* PUB.L. 110-325, 122 STAT. 3553 (2008); *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 474 (5th Cir. 2006).

A major life activity is an activity that is "central to the life process itself."[10] *Bragdon v. Abbott,* 524 U.S. 624 (1998); *Waldrip v. Gen.Elec. Co.*, 325 F.3d 652, 655 (5th Cir. 2003); *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.,* 242 F.3d 610, 613-14 (5th Cir. 2001). Major life activities are those basic activities that the average person in the general

---

[10] "Major life activity" is not defined in the 1990 ADA. It has since been defined by amendment in the 2008 ADAAA. However, that definition is not retroactive, as explained below. Before the 2008 amendments, the phrase was defined through regulations and case law. *See also EEOC v. Chevron Phillips Chem. Co., L.P.*, 570 F.3d 606, 614 n.4 (5th Cir. 2009) ("While the Supreme Court has not decided what deference, if any, is due to implementing regulations issued by the EEOC, it has relied on these regulations in analyzing [ADA] cases, particularly when neither party to a case challenges their reasonableness.").

population can perform with little or no difficulty.[11] A person is substantially limited in a major

life activity if (s)he is unable to perform the activity; or significantly restricted in the condition,

manner, or duration under which he can perform the activity as compared to the average person

in the general population. 29 C.F.R. § 1630.2(i) (2007); *Moreno v. Brownlee,* 85 Fed. Appx. 23,

27 (5th Cir. Jan. 7, 2004); *Rogers v. Int'l Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.

1996); *Dutcher,* 53 F.3d at 726.

      The factors considered in determining whether an individual is substantially limited in a

major life activity generally include: the nature and severity of the impairment; the duration or

expected duration of the impairment; and the permanent or long term impact, or the expected

permanent or long term impact of, or resulting from, the impairment.[12] *Id.* The burden is on

Plaintiff to produce evidence substantiating that he faces limitations preventing or severely

restricting him "from doing activities that are of central importance to most people's daily lives."

*Toyota Motor Mfg. v. Williams,* 534 U.S. 184, 198 (2002), *superseded in part by statute, ADA*

*Amendments Act of 2008*, PUB.L. 110-325, 122 STAT. 3553 (2008); *Hinojosa v. Jostens, Inc.,*

128 Fed. Appx. 364, 367 (5th Cir. 2005).

      Factors to consider in determining if an individual is substantially limited in a major life

---

[11] These include, but are not limited to: walking, *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1025 (5th Cir. 1999); seeing, *Still v. Freeport-McMoran, Inc.,* 120 F.3d 50, 52 (5th Cir. 1997); eating, *Waldrip,* 325 F.3d at 655; hearing, *Ivy v. Jones,* 192 F.3d 514, 516 (5th Cir. 1999); and, reproduction, *Bragdon,* 524 U.S. at 637-39. 29 C.F.R. § 1630.2(i) (2007); *see generally Jenkins v. Cleco Power L.L.C.,* 487 F.3d 309 (5th Cir. 2007); *Curl v. United Supermarkets,* 179 Fed. Appx. 208, 208 (5th Cir. 2006); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 725, n.7 (5th Cir. 1995).

[12] While it is easy to conflate them, it is important to remember that in ADA litigation the terms *restrictions, substantial limitations, impairments* and *disability* each have their own meaning. Generally speaking, a *restriction* is the prescribed limitation on a subject's activity that results from the medical assessment of his impairment. It becomes a *disability* only if it substantially limits him in performing a major life activity.

activity as it pertains to work include: the relevant geographical area; the job from which the

individual has been disqualified because of an impairment, and the number and types of similar

jobs within that area from which the individual is also disqualified because of the impairment

(the "class of jobs"); and the job from which the individual has been disqualified because of an

impairment, and those other jobs in the area that do not use similar training, knowledge, skills or

abilities (the "broad range of jobs in various classes"). 29 C.F.R. § 1630.2(j) (2007).

A person has a record of such an impairment if she has a history of, or has been mis-

classified as having, a mental or physical impairment that substantially limits one or more major

life activities. 29 C.F.R. § 1630.2(k) (2007). A person is regarded as having such an impairment

if (s)he: has a physical or mental impairment that does not substantially limit major life

activities, but is treated as having a substantially limiting impairment; or has a physical or mental

impairment that substantially limits one or more major life activities, but only because of the

attitudes of others toward the impairment; or has no actual impairment at all, but is treated by an

employer as having a substantially limiting impairment. 29 C.F.R. § 1630.2(l) (2007).

A qualified individual is one who, with or without reasonable accommodations, can

perform the essential functions of the job. 29 C.F.R. § 1630.2(m) (2007). Essential functions are

those that are fundamental to the job at issue. 29 C.F.R. § 1630.2(n) (2007). The term does not

include the marginal functions of a job. 29 C.F.R. § 1630.2(n)(1) (2007). A variety of factors

may be considered in deciding whether a function is essential: the reasons the job exists, the

number of employees available within the company for that work, the degree of  specialization

the job requires, the employer's judgment as to which functions are essential, written job

descriptions prepared before advertising or interviewing applicants for the position, the

consequences of not requiring an employee to satisfy that function, and the work experience of

others who held the position. 29 C.F.R. § 1630.2(n)(2) (2007).

The deposition testimony Plaintiff submitted on this point fails to evidence a disability.[13] As noted, she had been given medical leave to deal with depression, anxiety and stress in July, 2007. She submits that her depression, anxiety and stress caused her "lack of sleep," leaving her "tired" with a tendency to make "poor decisions," and led to "[s]trained relationships with my family and friends." Def. App. at 20. This evidence does not address whether she had an *impairment* that limited her in *major life activities* as discussed above[14] by preventing or severely restricting her "from doing activities that are of central importance of most people's daily lives." *Toyota Motor Mfg.* 534 U.S. at 190; *Hinojosa,* 128 Fed. Appx. at 367. Therefore, Plaintiff failed to present any evidence that would establish these facts and permit the Court to determine her status with regard to disability under the ADA.

Even if disabled, Plaintiff would still have to produce evidence that, with or without accommodation, she could continue perform the essential functions of her position if provided reasonable accommodation. 42 U.S.C. § 12111(8) (2010). The statute further requires courts to give consideration to "the employer's judgment as to what functions of a job are essential," including any written description prepared by the employer. *Id.* Plaintiff failed to present any evidence that would establish these facts and permit the Court to determine her status with regard to reasonable accommodation.  Even if she proved as much, Plaintiff would still have to

---

[13] Indeed, Plaintiff admits in the deposition portions submitted by Defendant that "[f]or the most part" she was able to "do everything that she could do before." Def. App. at 20. Asked "if there were any major life activities [she] couldn't do because" of her depression and stress," she granted that she could "walk ... see .. stand [and] work," offering that "[l]ife requires we do things under strenuous ... circumstances ...." *Id.* at 20-21. In Plaintiff's EEOC Intake Questionaire she stated that she had no disability. Def. App. 069.

[14] See footnote 8 above and associated text.

produce evidence that she was replaced by someone who was not disabled or that she was treated differently because she was disabled. She has failed to do so.

The Court finds that Plaintiff failed to establish a prima facie case of disability under the ADA. Even if she had established a prima facie case, Defendant has articulated non-discriminatory reasons for firing her.

### c.  Defendant's Articulation of Non-Discrimination

Defendant asserts the same reasons for firing Plaintiff as discussed above; that is, a pattern of dishonesty and financial improprieties that was unabated despite forgiveness from Defendant after the earliest instances. As noted before, that is an articulation of non-discriminatory reasons that meets Defendant's burden under *McDonnell Douglas.*

### d.  Plaintiff's Pretext Argument

Plaintiff does not offer an argument to establish pretext. With regard to evidence, she obtained in deposition an admission from her immediate supervisor that her short-term disability period off was "open-ended" under her written application. The Court might construe this as some evidence that she was fired for taking disability leave, but this is far from carrying her burden to establish pretext on the part of Defendant, particularly when combined with her own sworn admission that she had told Defendant she would conclude this leave by August 1, 2007.

### e. Conclusion

The Court concludes that summary judgment is appropriate as to Count Three of Plaintiff's Complaint. The Court concludes that summary judgment should be granted as to Count Three of the Plaintiff's Complaint. The Court turns now to Court Four.

### 4.  Count Four: Plaintiff's FMLA Claims

#### a.  Legal Basis

31

The Family and Medical Leave Act ("FMLA") allows eligible employees working for covered employers to take a reasonable leave of absence for certain enumerated reasons, including medical reasons, without fear of losing their jobs as a result. 29 U.S.C. § 2601(b) (2010); *Hunt*, 277 F.3d at 763. The Fifth Circuit has explained that the statute contains both prescriptive and proscriptive components. *See Nero v. Indus. Molding Corp.,* 167 F.3d 921, 927 (5th Cir. 1999). The prescriptive (or entitlement) provision creates a series of substantive rights. *Id.* For example, the FMLA mandates that covered employers provide eligible employees up to 12 weeks of unpaid leave if the employee has "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D) (2010); *Hunt*, 277 F.3d at 763. Upon returning from leave under the Act, an employee is also entitled to be restored to his or her former position or to an equivalent position. 29 U.S.C. § 2614(a)(1) (West 2010); *Nero*, 167 F.3d at 927. The proscriptive aspect of the FMLA  protects employees from retaliation or discrimination for exercising their rights under the statute. *Nero*, 167 F.3d at 927.

Count Four of Plaintiff's Complaint combines two causes of action under the Family and Medical Leave Act ("FMLA") claiming Defendant violated it both by failing to provide her medical leave and by retaliating against her for requesting it.

### b.  Plaintiff's FMLA Leave Claim

The undisputed evidence is that Plaintiff *was* provided leave by Defendant. *See* Pl. Resp. at 2-3. The sole contention over that leave is whether she had completed it when fired. While Plaintiff's pleadings and response allege she was on leave when fired, *see e.g.* Pl. Resp. at 3, her own testimony says otherwise:

Q. Okay. So your leave paperwork indicates that August 1, 2007, was going to be the day that you would return to work unless the doctor said otherwise?

A. Correct.

Q. And you never had a doctor say otherwise; is that right?

A. To say otherwise?

Q. To say that you couldn't come back on August 1, 2007, because you never went to your appointment?

A. I don't believe I went to that appointment.

Q. Okay. So you never had a doctor say you couldn't --

A. I'm not- I had-

Q. I'm sorry. Let me ask my question. So you never had a doctor say you could not come back on August I, 2007, correct?

A. Correct.

Def. App. at 30.

Plaintiff constructed her response to the summary judgment motion in part on the notion she was fired for taking leave, *see* Pl. Resp. at 2-3, and thus appears to have abandoned the pled-for claim of failure to grant leave. Accordingly, summary judgment is appropriate as to that claim.

### c. Plaintiff's Prima Face Case (FMLA Retaliation)

In order to establish a prima facie case of retaliation under the FMLA, Plaintiff must show the following: (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) she was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder v. Metropolitan Trans. Auth. of Harris County, Texas,* 446 F.3d 574, 580 (5th Cir. 2006) (citations omitted). If Plaintiff states a prima facie case, the burden then shifts to Defendant to article non-discriminatory reasons why Plaintiff was terminated and

is therefore not entitled to restoration of her position. *Id.* The burden would then shift back to Plaintiff who must show by a preponderance of the evidence that the reasoning presented by the defendant is a pretext for retaliation. *Id.*

Defendant admits it gave Plaintiff FMLA leave and admits firing her. As for the third prong of prima facie case for retaliation, Plaintiff presents no evidence as to any employee treated more favorably, and thus relies on a demonstration that she was fired because she had availed herself of FMLA protection to perfect her case.

She does so essentially on a recast of her earlier stated proximity argument to infer FMLA violations by the Defendant; that is, because her medical leave and her termination were temporally sequential, the former was the cause of the latter. Out of caution, the Court will consider that this establishes a prima facie case and turn to Defendant's response.

### d.  Defendant's Articulation of Non-Discrimination (FMLA Retaliation)

Defendant articulates the various non-discriminatory reasons for firing her recited above. It further supports this with undisputed evidence that Defendant had already determined that Plaintiff was to be fired before taking leave, but waited until her return from leave precisely to avoid any interference with that leave. Further, Defendant produced evidence that the decision to fire her was made before she even requested FMLA leave which she provided notice of on July 18, 2010.[15] The present facts are similar to those in *Burris v. Brazell,* 351 Fed. Appx. 961 (5th

---

[15] Angela Quebedeaux, Defendant's Human Resources Business Partner, testified by affidavit that: "On July 19, 2007, I received notice that Ms. Armstrong had requested FMLA leave. Ms. Armstrong's requested leave was wholly unrelated to the decision to terminate her employment because the Company had already made the decision on July 10, 2007, to discharge Ms. Armstrong. Nevertheless, the Company decided to grant Ms. Armstrong's leave request. The Company did not terminate her employment until she completed her requested leave on July 31, 2007. Accordingly, the Company scheduled Ms. Armstrong to receive notice of the termination of her employment on August 1, 2007, the day she stated she would return to work." Def. App.

34

Cir. Tex. 2009). In *Burris* the person who decided to fire the plaintiff was unaware of a request

she had made within their company for FMLA leave. *Id.* at 963.[16] Here, Plaintiff did not even

request leave until after the decision was made to fire her.[17]  As such, Defendant articulated non-

discriminatory reasons on this issue.

> **e.  Plaintiff's Pretext Argument (FMLA Retaliation)**

Plaintiff does not present an argument of pretext, leaving her proximity evidence as the

sole *evidence* of it. Again, this fails to meet her burden, particularly given uncontradicted

evidence that the determination of termination was made *before* her request for FMLA leave.

> **f. Conclusion**

The Court concludes that summary judgment is appropriate as to both causes of action

stated under Count Four of Plaintiff's Complaint. The Court turns to Count Five.

> **5.  Count Five: Plaintiff's Claim of Intentional Infliction of Emotional Distress**

In Texas, the elements of the tort of intentional infliction of emotional distress are: (1)

the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3)

the actions of the defendant caused the plaintiff emotional distress; and (4) the resulting

emotional distress was severe.  *GTE Southwest v. Bruce,* 998 S.W.2d 605, 611 (Tex. 1999)

*(citing Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998)). A claim for

intentional infliction of emotional distress can be sustained only if emotional distress is the

---

at 33.

[16] "As the district court noted, [the plaintiff] produced no evidence that anyone involved in her termination was aware of her request for leave .... Assuming that [the plaintiff] could make a prima facie showing on her retaliation claim, she offers no evidence to rebut [the defendant's] legitimate, non-discriminatory reason for her termination--namely, her unprofessional conduct ...." *Id.*

[17] See footnote 12, above.

intended or primary consequence of the defendant's conduct. *Id.* Further, the Court must determine whether a defendant's conduct has been so extreme as to warrant submission to the jury of a claim of intentional infliction of emotional distress. *GTE Southwest, Inc.,* 998 S.W.2d at 612. Only if reasonable minds might differ should the case be submitted to a jury. *Hoffman-LaRoche v. Zeltwanger,*144 S.W.3d 438, 445 (Tex. 2003).

In her brief responding to the summary judgment motion, Plaintiff does not make an argument supporting this claim. Nor does she present evidence, or suggest inference from evidence, of cruelty rising to the level of conduct "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Hoffman,* 144 S.W.3d at 445; *Twyman v. Twyman,* 855 S.W.2d 605, 612 (Tex. 1999).

Accordingly, the Court concludes that summary judgment should be granted against Plaintiff's Count Five. The Court turns to Count Six.

### 6.        Count Six: Plaintiff's Negligence Claim

The elements of negligence in Texas are: a duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood,* 197 S.W.3d 793, 794 (Tex. 2006) *(citing El Chico Corp. v. Poole,* 732 S.W.2d 306, 311, 30 Tex. Sup. Ct. J. 469 (Tex. 1987)). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Kroger Co.,* 197 S.W.3d at 794 (*citing Van Horn v. Chambers,* 970 S.W.2d 542, 544, 41 Tex. Sup. Ct. J. 1168 (Tex. 1998)).

Plaintiff claims that Defendant was negligent in preventing its supervisors from injuring her health through age and gender discrimination. Even assuming she had survived summary judgment as to age and gender discrimination, the Court would then have to take note that

Defendant subscribes to the Texas workers compensation system, as Plaintiff herself acknowledged in deposition. Def. App. at 40. Under Texas law, job-related injuries resulting from employer negligence are compensable solely through the state's worker compensation scheme if the employer subscribes to the system. *Rodriguez v. Naylor Indus., Inc.,* 763 S.W.2d 411, 412 (Tex. 1989). This general rule includes specific claims of poor supervision that failed to prevent discrimination,. *Ajaz v. Cont'l Airlines,* 156 F.R.D. 145, 148-50 (S.D. Tex. 1994).

The Court concludes that summary judgment should be granted against Count Six of Plaintiff's Complaint. The Court turns to Count Seven.

### 7.      Count Seven: Plaintiff's Breach of Contract Claim

Plaintiff alleges a breach of contract under Texas law and must therefore establish that: (1) valid contract existed;  (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach. *Mullins v. TestAmerica Inc.,* 564 F.3d 386, 418 (5th Cir. Tex. 2009); *Pegram v. Honeywell, Inc.,* 361 F.3d 272, 288 (5th Cir. Tex. 2004). Plaintiff's evidence must show an offer, mutual assent to the offer, and the execution and delivery of a contract with the intent that it be binding, in order to establish a valid contract. *See Tex. Gas Util. Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex. 1970); *Buxani v. Nussbaum,* 940 S.W.2d 350, 352 (Tex. App.–San Antonio 1997, no writ).

Plaintiff attempts to construct an employment contract out of the employee's manual and her expectations, an approach that has been rejected under Texas law. *Federal Express Corp. v. Dutschman*, 846 S.W.2d 282 (Tex. 1993); *Phelps Dodge Ref. Corp. v. Medina,* 2003 Tex. App. LEXIS 2366, *13-15 (Tex. App.—El Paso 2003, pet. denied) . Plaintiff herself presented evidence

that she was an at-will employee, Pl. App. at 36,[18] and stated that she was when deposed. Def.

App. at 5,  7.. At-will employees may be dismissed for almost any reason, and certainly upon

suspicion of dishonesty and financial impropriety. *See Farm Bureau Mut. Ins. Co., v. Sears,* 84

S.W.3d 604 (Tex. 2003). She does not contend either exception applies.

The Court concludes that summary judgment should be granted as to Count Seven of

Plaintiff's Complaint. The Court turns to Count Eight.

### 8.        Count Eight: Plaintiff's Wrongful Discharge Claim

In Count Eight, Plaintiff attempts to construct a novel state action for wrongful discharge

based on the allegation that:

> Defendant's employees maliciously, without just cause or excuse, and with willful
> intent to injure Plaintiff, conspired to bring about Plaintiffs disgrace, humiliation
> and ruin, to cause Plaintiffs discharge from employment with Defendant by
> falsely accusing Plaintiff of falsifying records and discriminating against Plaintiff
> in various ways and ultimately causing Plaintiffs discharge from employment
> with Defendant. Such conduct of Plaintiff through its employees was in breach of
> Plaintiffs contract of employment.

Pl. Compl. 13.

The breach of contract issue has earlier received a determination based on Plaintiff's own

admission she was an at-will employee. As for wrongful discharge, it is black letter law in Texas

that the sole basis for such a claim is that common law exception[19] to at-will employment law

---

[18] In her offer of employment as a senior representative in Dallas, she was told: "As an at-will
employee of the Company, just as you reserve the right to leave your employment at any time
with or without cause, the company retains the right to end the employment relationship at
anytime, with or without cause and or for any reason." *Id.*
[19] The legislature has provided related, specific statutory exceptions neither pled nor applicable
here. *See, e.g.,* TEX. AGRIC. CODE ANN. §125.013(b); TEX. LAB. CODE ANN. §21.2585(a)(2)(b),
(b).

under which a case lies where the employee was fired for failing to commit an illegal act. 33 TEX

JUR EMPLOYER AND EMPLOYEE § 53; *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 735

(Tex. 1985); *Hawthorne v. Star Enter., Inc.,* 45 S.W.3d 757, 760 (Tex. App.-Texarkana 2001,

pet. denied); *see also Austin v. Healthtrust, Inc.,* 967 S.W.2d 400, 403 (Tex. 1998) (no exception

made even for "whistle-blowers"to the law of at-will employment). Plaintiff does not assert any

such exceptions.

The Court concludes that summary judgment is appropriate against Count Eight of

Plaintiff's Complaint. The Court turns to Count Nine.

### 9. Count Nine: Plaintiff's Claim for Punitive Damages

The punitive damages sought by Plaintiff are a moot point in view of the summary

judgment this ruling makes against each of Plaintiff's claims.

### IV. CONCLUSION & ORDER

Summary judgment is appropriate against every claim made by Plaintiff. Accordingly,

the Court **CONCLUDES** that a Order shall be entered consistent with that conclusion and that

this case be dismissed in its entirety.

So **ORDERED** this 21st day of June, 2010.


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**